## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

**BRITTANY BONGIOVANNI**, *et al.*

Plaintiffs,

v.

**LLOYD AUSTIN, III.**, in his official capacity as Secretary of Defense, *et al.*,

Defendants.

Case No. 3:22-cv-580-MMH-MCR

## MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants move to dismiss this Action. The grounds for this motion are set forth below.

## MEMORANDUM OF LAW

More than one *million* Americans have died from COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html. Seeking to protect the force and military mission in the face of one of the worst pandemics in history and the harms that had already occurred to military forces, Secretary of Defense Austin directed the military departments to add the COVID-19 vaccination to the list of those required for Service members to remain fit for military service. The military has long maintained an immunization program to maintain strategic readiness by maintaining and protecting the health of personnel from naturally occurring diseases or pathogens endemic to specific duty or deployment areas.

1

Plaintiffs—four Sailors in the Navy—object to the military's readiness policy and seek an order from this Court that would require their commanding officers to maintain them in their billets and deem them fit for deployment as if they were vaccinated. Such relief would be manifestly improper, particularly in the military context where the Supreme Court and this Circuit's precedents have consistently cautioned against judicial interference. As Justice Kavanaugh emphasized in a recent concurrence, "[u]nder Article II of the Constitution, the President of the United States, not any federal judge, is the Commander in Chief of the Armed Forces," and there is no basis to "employ[] the judicial power in a manner that military commanders believe would impair the military of the United States as it defends the American people." *Austin v. U.S. Navy SEALs 1-26*, 142 S. Ct. 1301, 1302 (2022) (Kavanaugh, J., concurring) (mem.). Plaintiffs also seek an order that would require the Navy to retain them. But the Navy has not decided whether to retain or separate any Plaintiff.

This Court should dismiss this Action. First, the Court may not dictate the Navy's deployment, assignment, and other operational decisions. The Court otherwise lacks jurisdiction over this matter because the involuntary discharge Plaintiffs seek to redress may not occur at all. The Supreme Court has held that judicial interference with a military administrative discharge proceeding was premature where, as here, the service Secretary has not yet acted on the discharge recommendation and has not decided whether to separate the officer. *Beard v. Stahr*, 370 U.S. 41, 42 (1962). Indeed, in this Circuit, if such a "suit was filed before discharge, the court may not stay the discharge pending exhaustion of administrative remedies." *Hodges v. Callway*, 499 F.2d

2

417, 421 (5th Cir. 1974).[1] Rather, judicial redress of injuries arising from Navy personnel actions must await a final decision on a petition for relief from the Board for Correction of Naval Records ("BCNR"). *See id.* at 420; *see also Chappell v. Wallace*, 462 U.S. 296, 303 (1983) ("Board decisions are subject to judicial review[.]"). Until that time, "the doors of the federal courthouse [are] closed[.]" *Hodges*, 499 F.2d at 420. "While [Plaintiffs] may ultimately have recourse to the courts to protect [their] constitutional rights, the courts will not interfere with the disciplinary or executive functions of the armed services." *McCurdy v. Zuckert*, 359 F.2d 491, 495 n.6 (5th Cir. 1966). Because there is no sound basis for the Court to continue to entertain this case at this time, the Court should dismiss it. Moreover, Plaintiffs' claims fail as a matter of law.

## BACKGROUND

### I.    10 U.S.C. § 1107a and FDA-Approved COVID-19 Vaccines

10 U.S.C. § 1107a makes no mention of religious or philosophical objections to any medical product. It provides that "[i]n the case of the administration of [an EUA] product . . . to members of the armed forces, the condition described in" the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 360bbb-3, "designed to ensure that individuals are informed of an option to accept or refuse administration of a product, may be waived only by the President only if the President determines, in writing, that complying with such requirement is not in the interests of national security." 10 U.S.C.

---

[1] Decisions of the Fifth Circuit rendered before October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

§ 1107a. A comprehensive analysis of the FDCA provision and its cognate provisions, § 1107a, is available in a 2021 Office of Legal Counsel opinion.[2]

On August 23, 2021, the FDA approved a Biologics License Application ("BLA") for the Pfizer vaccine, for individuals who are 16 years of age and older. ECF No. 1-4. A BLA is an application for approval to introduce, or deliver for introduction, a biologic product into interstate commerce. 21 C.F.R. § 601.2.[3] "Comirnaty"[4] is also available under an EUA for the approved and other uses. At the time of approval, the FDA worked with Pfizer to identify "BLA-compliant" lots of the vaccine, which are lots of the vaccine that were manufactured in facilities listed in the BLA and that had undergone lot release, but which bore the EUA label.[5] The FDA additionally determined that the approved and EUA vaccine could be used interchangeably without presenting any safety or effectiveness concerns. https://www.fda.gov/media/150386/download, at 3 n.15. On January 31, 2022, the FDA approved a second COVID-19 vaccine, Spikevax, manufactured by ModernaTX, Inc. https://www.fda.gov/media/155815/download.

---

[2] Dep't of Justice, Whether Section 564 of the [FDCA] Prohibits Entities from Requiring the Use of a Vaccine Subject to an [EUA], 45 Op. O.L.C. ___, slip op. (July 6, 2021), https://www.justice.gov/olc/file/1415446/download.

[3] *See* FDA, Biologics License Applications (BLA) Process (CBER) (Jan. 27, 2021), https://www.fda.gov/vaccines-blood-biologics/development-approval-process-cber/biologics-license-applications-bla-process-cber.

[4] "Comirnaty" is the proprietary name of a COVID-19 vaccine manufactured by Pfizer, Inc. ECF No. 1-4.

[5] *See* FDA, Summary Basis for Regulatory Action (Nov. 8, 2021) at 27, https://www.fda.gov/media/151733/download.

## II.   Plaintiffs' Opportunities to Persuade the Navy to Retain Them

Absent a pending or approved exemption, a Navy Sailor who refuses to comply with an order to be vaccinated against COVID-19 will be processed for administrative separation. Declaration of William Merz ¶ 13 ("Merz Decl."), ECF No. 31-10. But separation is not the immediate or certain outcome of this process. *Id.* ¶ 15. Rather, the *initiation* of separation proceedings is just the beginning of an extensive administrative opportunity to present evidence and argument that separation would be unwise or contrary to law. Sailors with more than six years of service—like Plaintiffs Kins, Macie, and Montoya—may elect an administrative board procedure, where they are entitled to representation by counsel at no expense to themselves. *Id.* ¶ 15.a-c; Am. Compl. ¶¶ 12-14. The Sailor (through counsel) may proffer evidence, call witnesses, and present arguments to the board as to why he or she should not be separated and regarding his character of service. Merz Decl. ¶ 15. The Navy bears the burden of proving by a preponderance of the evidence that the basis of the evidence is met and that the respondent should be recommended for separation. *Id.* The board then makes a recommendation to separate or retain the Sailor. *Id.* If the board finds no basis for separation or that the officer should be retained, the case will be closed and the report of misconduct will not be entered into the officer's official file. *Id.*

If the Board recommends the officer for separation, the recommendation (including a recommended characterization of service), a record of proceedings, and any additional statement by the Sailor are routed to the Assistant Secretary of the Navy. *Id.* The Assistant Secretary of the Navy then exercises discretion whether to

accept the recommendation or disagree with the Board and retain the officer. *Id*. If separation is approved, the decision is then transmitted via naval message to the officer's command, which effectuates the separation. *Id.* ¶ 16. The officer then must be separated within 60 days of the approved separation notice. *Id.*

Although the proceedings available to Plaintiff Bongiovanni—a Navy officer with less than six years of service—are somewhat less formal, she still may submit evidence and argument "regarding why [she] should be retained" and to "consult with qualified counsel." *See id*. ¶ 15(b). If Bongiovanni is separated only for refusing to vaccinate against COVID-19, she will be given an Honorable characterization of service absent extenuating circumstances. *Id.*

If a Sailor is ultimately separated for refusing to become vaccinated against COVID-19, the Sailor will be issued either an honorable or general characterization of service consistent with the 2022 National Defense Authorization Act, Pub. L. No. 117-81 § 736(a), 135 Stat. 1541, 1800. Merz Decl. ¶ 15(f). If separated, probationary officers like Plaintiff Bongiovanni "will be given an Honorable characterization of service unless there are extenuating circumstances" while other Sailors' characterization of service will be determined after an opportunity to be heard through the process described above. *See id*. ¶ 15(c).

A discharged Sailor may seek further review through the Naval Discharge Review Board or the BCNR. *Id*. ¶ 19. The Naval Discharge Review Board may alter the terms of a discharge—such as its characterization—on grounds of equity or

propriety. *See id*. The BCNR has far more extensive authority, including the authority to void discharges resulting in a Sailor being reinstated in the Navy. *Id*.

## LEGAL STANDARDS

"'Federal courts are courts of limited jurisdiction' and 'possess only that power authorized by Constitution and statute.'" *Bishop v. Reno*, 210 F.3d 1295, 1298 (11th Cir. 2000) (citation omitted). Where a plaintiff fails to demonstrate a court's subject-matter jurisdiction, dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(1). *Langston v. Tex. Cap. Bank, NA*, No. 8:20-cv-2954, 2021 WL 698171, at *2 (M.D. Fla. Feb. 23, 2021). If the Court "ha[s] been presented with 'facts beyond the four corners' of the pleading that are relevant to the question of [subject matter jurisdiction], [the Court] may consider them." *See Corbett v. TSA*, 930 F.3d 1225, 1228 (11th Cir. 2019) (citation omitted). "The party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).

"Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "[T]he doctrine of limited reviewability of certain military decisions is a matter of justiciability," and is therefore properly considered pursuant to Rule 12(b)(6). *Khalsa v. Weinberger*, 779 F.2d 1393, 1395 (9th

Cir. 1985), *aff'd*, 787 F.2d 1288 (9th Cir. 1985).  In conducting that analysis, a court may consider declarations or affidavits from military officials.  *Id*. at 1400.

Judicial review of claims involving the "complex subtle, and professional decisions as to the composition, training, equipping, and control of a military force[,]" *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973), is highly constrained. *Rostker v. Goldberg*, 453 U.S. 57, 66 (1981); *Aktepe v. United States,* 105 F.3d 1400, 1403 (11th Cir. 1997); *see also Santiago-Lugo v. Warden*, 785 F.3d 467 (11th Cir. 2015). Such deference extends to constitutional claims and military decisions about the health and welfare of the troops. *See e.g.*, *Solorio v. United States*, 483 U.S. 435, 448 (1987); *Mazares v. Dep't of Navy*, 302 F.3d 1382, 1385 (Fed. Cir. 2002).

## ARGUMENT

### I.    Plaintiffs' Claims for Declaratory or Injunctive Relief with respect to the Navy's Deployment, Assignment, and Operational Decisions are not Justiciable.

Plaintiffs are not entitled to declaratory or injunctive relief dictating the Navy's deployment, assignment, and operational decisions. Am. Compl. ¶¶ 82-83. "[J]udges are not given the task of running the Army" or the Navy, and it is the Executive officials charged with protecting our national security and defending our borders—not courts—who have authority to determine servicemembers' fitness for duty and assignments. *Orloff v. Willoughby*, 345 U.S. 83, 93 (1953). "[J]udicial inquiry into the national-security realm raises 'concerns for the separation of powers in trenching on matters committed to the other branches.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1861

(2017) (citation omitted). "It is this power of oversight and control of military force by elected representatives and officials which underlies our entire constitutional system[.]" *Gilligan*, 413 U.S. at 10.

The problems with judicial intervention in military affairs are not limited to formal separation-of-powers concerns, but include practical ones, too. "The complex[,] subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments[.]" *Id*. Accordingly, "it is difficult to conceive of an area of governmental activity in which courts have less competence." *Id*.; *cf. Bryant v. Gates*, 532 F.3d 888, 899 (D.C. Cir. 2008) (Kavanaugh J., concurring) ("[M]ilitary decisions and assessments of morale, discipline, and unit cohesion . . . are well beyond the competence of judges.").

In *Reaves v. Ainsworth*, 219 U.S. 296 (1911), for example, the Supreme Court refused to second-guess the military's determination of a servicemember's "fitness for promotion." *Id*. at 298. In *Orloff*, the Court emphasized that it had "found no case where th[e Supreme] Court ha[d] assumed to revise duty orders as to one lawfully in the service." 345 U.S. at 94. Accordingly, throughout our history, courts declined to second-guess military judgments regarding fitness for duty and assignments. *See, e.g. Harkness v. Sec'y of the Navy*, 858 F.3d 437, 443-45 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 2648 (2018); *Antonellis v. United States*, 723 F.3d 1328, 1336 (Fed. Cir. 2013); *Sebra v. Neville*, 801 F.2d 1135, 1141-42 (9th Cir. 1986). And that hesitance has extended even to constitutional challenges. *See, e.g., Orloff*, 345 U.S. at 93-94 (Fifth Amendment);

*Harkness*, 858 F.3d at 443-45 (First Amendment); *see also, e.g., United States v. Webster*, 65 M.J. 936, 946-48 (Army Ct. Crim. App. 2008) (rejecting argument that RFRA entitled Muslim servicemember to challenge his deployment to Iraq).

Consistent with these longstanding principles, the Supreme Court recently granted the Government's emergency application for a partial stay of an injunction interfering with military assignment decisions concerning unvaccinated Sailors. *Navy SEALs 1-26*, 142 S. Ct. at 1301. As Justice Kavanaugh explained, a federal court does not have the authority to "insert[] itself into the [military's] chain of command, overriding military commanders' professional military judgments." *Id*. at 1302.

Plaintiffs' request for declaratory and injunctive relief to redress grievances about their commanders' operational decisions and duty assignments, *see* Am. Compl. ¶¶ 82-83, 86, flouts those principles. By requesting an order to require the Navy to deploy and assign Plaintiffs without regard for their vaccination status, Plaintiffs ask this Court to in effect override military commanders' "professional military judgments" about operational needs and requirements. *Gilligan*, 413 U.S. at 10; see *Chappell*, 462 U.S. at 300 (warning against suits that "tamper with the established relationship between en-listed military personnel and their superior officers"). That extraordinary request is neither "appropriate relief" under RFRA, 42 U.S.C. 2000bb-1(c), nor consonant with the "traditional principles of equity jurisdiction," *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318-19 (1999) (citation omitted), that constrain the available relief on their second and third counts, *see*

10

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327-38 (2015), and their fourth and fifth counts, *see* 5 U.S.C. § 702 (providing that the APA does not affect the "duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground"); *see also Saavedra Bruno v. Albright*, 197 F.3d 1153, 1158 (D.C. Cir. 1999) (Under § 702(1), courts "refuse 'to decide issues about foreign affairs, military policy and other subjects inappropriate for judicial action.'") (citation omitted).[6] Plaintiffs cannot demonstrate that the relief against the military "requested here was traditionally accorded by courts of equity." *Groupo Mexicano*, 527 U.S. at 319.

## II.   The Amended Complaint's Effort to Redress a Future Involuntary Separation is Not Ripe.

Plaintiffs' claims are otherwise not ripe for judicial review. "The ripeness doctrine examines 'whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decision-making by the court.'" *Corbett*, 930 F.3d at 1232 n.2. (quoting *Elend v. Basham*, 471 F.3d 1199, 1210-11 (11th Cir. 2006)). It "'keeps federal courts from deciding cases prematurely" and "'from engaging in speculation or wasting their resources through the review of potential or abstract disputes.'" *Meza v. U.S. Att'y Gen.*, 693 F.3d 1350, 1357 (11th Cir. 2012) (quoting *United States v. Rivera*, 613 F.3d 1046, 1050 (11th Cir. 2010)). Here, the Amended Complaint alleges that "Plaintiffs are in the process of involuntary

---

[6] Both "declaratory judgment and injunctive remedies are equitable in nature[.]" *Abbott Labs. v. Gardner*, 387 U.S. 136, 155 (1967).

separation, forced retirement . . . , or dismissal and will soon face a Board of Inquiry to determine their discharge status or other disciplinary proceedings,"[7] Am. Compl. ¶ 81; *see also id*. ¶ 85, and suggests that Plaintiffs will face "immediate adverse consequences," including "court-martial (criminal) prosecution," *id*. ¶ 31. But there are many reasons why these injuries are far from certain to occur at all, and Plaintiffs face no legally cognizable hardship from delay.

First, the Amended Complaint's suggestion that Plaintiffs are certain to receive "court-martial (criminal) prosecution," Am. Compl. ¶ 31 (citation omitted), is, in fact, maximally speculative. The Navy has explicitly "withheld to the Vice Chief of Naval Operations ["VCNO"]" any "authority to initiate [other] disciplinary proceedings, either non-judicial punishment or court-martial" like those Plaintiffs fear. Merz Decl. ¶ 13.[8] Instead, the Navy has ordered that "process[ing] for administrative separation"—not criminal-in-nature court-martial proceedings—follows for "Navy service members refusing the COVID-19 vaccination, absent a pending or approved exemption[.]" NAVADMIN 225/21 ¶ 2.a; *see also* Merz Decl. ¶ 13.

---

[7] The Amended Complaint is incorrect to suggest that the Navy has already decided to discharge each Plaintiff, misrepresenting that Plaintiffs face "a Board of Inquiry to determine [only] their discharge status." Am. Compl. ¶ 81. This misstates the nature and purpose of a Board of Inquiry proceeding. The Board of Inquiry also makes a recommendation about whether a Sailor should be retained or separated. *See supra* at 5-7.

[8] Plaintiff Kins alleges that he has received "an Article 15, or non-judicial punishment [ ], for failure to obey a lawful order under Article 92 of the UCMJ[.]" Am. Compl. ¶ 12. That punishment related to conduct other than his refusal to become vaccinated against COVID-19, which is unchallenged here.  Declaration of Captain Kenneth D. Anderson, ECF No. 31-16 ¶ 10

Because Plaintiffs' involuntary separation will not occur pursuant to the challenged DoD vaccination directive "without a second stage of decisionmaking" the challenged DoD directive is not ripe for review. *Wilderness Soc'y v. Alcock*, 83 F.3d 386, 390 (11th Cir. 1996). Here, Plaintiffs remain several steps of discretionary Navy decisionmaking removed from an involuntary separation or discharge—a decision to retain a Plaintiff at any of these points will mean that the involuntary separation will not occur.

For Sailors, the *initiation* of separation proceedings for failure to receive a COVID-19 vaccine is just the beginning of an extensive series of opportunities to demonstrate to the appropriate authorities that retention, not separation, is appropriate. *See supra* at 5-7. Accordingly, an involuntary separation proceeding itself "is a tentative action not fit for judicial review; one can only speculate as to the final outcome of any proceeding." *Smith v. Harvey*, 541 F. Supp. 2d 8, 13 (D.D.C. 2008). And even if a board were to disagree with a Plaintiff's arguments for retention and recommend separation, the Assistant Secretary of the Navy may reject their recommendation and nonetheless retain him or her. *See supra* at 5-6. In these circumstances—when the head of the military department had not yet acted on a discharge recommendation from a separation board—the Supreme Court has held that judicial interference with a military administrative discharge proceeding was premature. *Beard*, 370 U.S. at 42. The Court should not "easily dismiss the possibility that [Plaintiffs] will have a fair opportunity to make [their] case to a Board" or other separation authority. *Shaw v. Austin*, 539 F. Supp. 3d 169, 183 (D.D.C. 2021). Plaintiffs

13

will have "multiple opportunities to present their arguments [against separation] to the [Navy] and for the [Navy] to respond" by deciding to retain them. *See Church v. Biden*, --- F. Supp. 3d ---, 2021 WL 5179215, at *10 (D.D.C. Nov. 8, 2021) (citation omitted); *see supra* 5-7. Unsurprisingly then, "district courts have similarly concluded that military discharge complaints are not ripe at the commencement of discharge proceedings; they are ripe only after a plaintiff has been discharged." *Roberts v. Roth*, ---F. Supp. 3d---, 2022 WL 834148, at *5 (D.D.C. Mar. 21, 2022).

Plaintiffs also fail to demonstrate judicially cognizable hardship from delay. "Postponement of any decision here would not serve as a hardship to [Plaintiffs] given that a final decision in [their] favor at the involuntary separation proceedings may render this action unnecessary." *Smith*, 541 F. Supp. 2d at 13. Any hardship to Plaintiffs "is mostly theoretical at this point since [they] ha[ve] not been actually discharged, so the Court cannot say that 'hardship caused by [ ] deferral' would be so 'immediate and significant' to 'overcome the finality and fitness problems inherent in attempts to review tentative positions.'" *Roberts*, 2022 WL 834148, at *5 n.3 (quoting *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 389 (D.C. Cir. 2012)). And in the meantime, Plaintiffs are not being forced to vaccinate. *See Bongiovanni v. Austin*, No. 3:22-cv-237, 2022 WL 1642158, at *1 (M.D. Fla. May 24, 2022). Again, the Supreme Court has already implicitly balanced these ripeness factors for a plaintiff who was not as far removed from separation as Plaintiffs. *See Beard*, 370 U.S. at 42.

Nor do Plaintiffs' complaints about their travel restrictions, duty assignments, or other operational decisions by their commanders constitute hardship in the ripeness

analysis because these are "effects of a sort that traditionally would [not] have qualified as harm." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998); *see also Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 809 (2003) ("[A]dverse effects of a strictly legal kind" are "required for a showing of hardship") (quoting *Ohio Forestry Ass'n, Inc.*, 523 U.S. at 733). Again, requests for the court to review and "revise duty orders as to one lawfully in the service"—are not justiciable at all. *Orloff*, 345 U.S. at 94; *see also Speigner v. Alexander*, 248 F.3d 1292, 1298 (11th Cir. 2001) ("Military promotion is one of the most obvious examples of a personnel decision that is integrally related to the military's structure.").[9]

## III.   Plaintiffs' Claims are Barred by Military Nonjusticiability Doctrine.

"[A] a court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures." *Winck v. England*, 327 F.3d 1296, 1303 (11th Cir. 2003) (quoting *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971)).[10]

---

[9] Even if Plaintiffs did demonstrate hardship from delay (which they do not) "agency action must satisfy both prongs"—"[u]nsuitability for review is determinative." *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 435 n.30 (5th Cir. 2021).

[10] The *Mindes* "test originally developed from claims in which service members *objected* to a military discharge or other personnel action," *Winck*, 327 F.3d at 1303, as Plaintiffs do here, Am. Compl. ¶ 31

**A. Plaintiffs' Claims for Declaratory and Injunctive Relief are Otherwise Not Appropriate Under *Mindes* and *Hodges* Because They have not Exhausted All Available Intraservice Corrective Measures.**

Binding precedent in this Circuit has long recognized that interests in comity, avoiding constitutional concerns about judicial interference with administration of the military, and effectuating Congress's mechanisms for reviewing military personnel decisionmaking preclude a court's use of declaratory or injunctive relief to interfere with an ongoing military personnel decisionmaking process. *Hodges*, 499 F.2d at 420. Assuming Plaintiffs' claims are not "nonjusticable across-the-board"[11] they must exhaust "all available military remedies[.]" *Winck*, 327 F.3d at 1303 n.4, 1303 n.5.

In *Hodges v. Callaway*, the former Fifth Circuit articulated the military administrative process that must be exhausted "[f]or purposes of this requirement." 499 F.2d at 420. Namely, "two types of administrative bodies provide review of discharge decisions[:]" "[t]he [Naval] Discharge Review Board" and the BCNR. *Id.*[12]

---

[11] Claims for injury that are incident to service in the military are nonjusticiable across-the-board unless the claim mounts a facial challenge to military regulations. *Winck*, 327 F.3d at 1303 n.5; *Speigner*, 248 F.3d at 1296. "Because there are a limited number of positions available at the higher levels of command, it is imperative to the military that only those officers determined to be competent to serve are retained." *Koury v. McHugh*, No. 2:10-cv-3643, 2012 WL 12952633, at *4 (N.D. Ala. Jan. 23, 2012) (quoting *Speigner*, 248 F.3d at 1298), *aff'd*, *Koury v. Sec'y, Dep't of Army*, 488 F. App'x 355 (11th Cir. 2012); *see also Burnett v. Pridmore*, No. CV 99-B-2718, 2000 WL 33941953, at *5-6 (N.D. Ala. Sept. 6, 2000) (finding equal protection claim nonjusticiable), *aff'd* 277 F.3d 1377 (11th Cir. 2001).

[12] Under 10 U.S.C. § 1552, Congress has established a Board for Correction of Military Records ("BCMR") in each military department. Each BCMR is a board composed of at least three high-ranking civilian employees. The Secretary of each military department, acting through the appropriate BCMR, possesses plenary authority to afford relief to Service members injured by adverse personnel actions, including but not limited to reversing involuntary separations, removing adverse information from personnel files, and awarding back pay and allowances. The Secretary of each military department, acting through the BCMR, may "correct any military record . . . when . . . necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1).

Under the rule of *Hodges*, "[i]f the suit was filed after discharge, the court may not retain jurisdiction while the plaintiff resorts to administrative review" and "if the suit was filed before discharge, the court may not stay the discharge pending exhaustion of administrative remedies." *Id*. at 421; *see also McCurdy*, 359 F.2d at 495. [13]

Plaintiffs have not exhausted their intraservice remedies for the feared discharge they seek to redress. Again, Plaintiffs speculate that they may be discharged, *see* Am. Compl. ¶¶ 3, 31, 81, 85, but they may raise their claims before a board or a show cause authority during discharge proceedings, so it is far from clear whether they will actually be discharged. *See supra* at 5-7. If Plaintiffs are discharged, they must first seek reinstatement or other redress from the BCNR before judicial review. *Winck*, 327 F.3d at 1303 n.4; *Hodges*, 499 F.2d at 420-24; *Mindes*, 453 F.2d at 198, 201; *McCurdy*, 359 F.2d at 495. [14]

---

[13] Courts routinely apply the requirement that a Service member exhaust her claims before the applicable Board for Correction of Military Records before bringing suit. *See, e.g., Crawford v. Tex. Army Nat'l Guard*, 794 F.2d 1034, 1036 (5th Cir. 1986); *Rucker v. Sec'y of the Army*, 702 F.2d 966, 970 (11th Cir. 1983); *Von Hoffburg v. Alexander*, 615 F.2d 633, 638, 641 (5th Cir. 1980); *Mindes*, 453 F.2d at 198; *McCurdy*, 359 F.2d at 495; *Leicht v. McHugh*, No. 13-60015-CIV, 2013 WL 11971266, at *2-4 (S.D. Fla. May 24, 2013); *Layman v. Harvey*, No. 8:05-cv-2208, 2007 WL 430678, at *6-10 (M.D. Fla. Feb. 5, 2007); *see also Nelson v. Miller*, 373 F.2d 474, 479 (3d Cir. 1967) ("The Fifth Circuit . . . has held that where post-discharge review could grant the complaining party 'complete retroactive restoration,' the district court was required to dismiss the complaint[.]") (citation omitted). Several courts have recently denied relief to service members who failed to exhaust their separation remedies before pursuing RFRA and First Amendment claims. *See, e.g., Church*, 2021 WL 5179215, at *10-11; *Roberts*, 2022 WL 834148, at *4-5; *Mark Short v. Berger*, No. CV 22-1151, 2022 WL 1051852, at *4 (C.D. Cal. Mar. 3, 2022), *appeal filed*, No. 22-55339 (9th Cir. Apr. 5, 2022).

[14] Plaintiffs allege that one Plaintiff has filed a complaint under Article 138 of the UCMJ, Am. Compl. ¶ 80. Even assuming the Court could redress a future separation by reviewing an Article 138 decision, Plaintiffs do not allege that the Navy has issued a decision on the Article 138 complaint and do not appear to seek review of any Navy decision issued under Article 138.

Moreover, nothing in RFRA implicitly overrules *Mindes* or its exhaustion requirement. RFRA permits suits for "appropriate relief against a government." 42 U.S.C. § 2000bb-1(c). The Amended Complaint seeks "equitable in nature" declaratory and injunctive relief against the military. *Abbott Labs.*, 387 U.S. at 155; *see* Am. Compl. Relief Requested. Suits for equitable "relief against" the military are not "appropriate[,]" *see* 42 U.S.C. § 2000bb-1(c), under *Mindes* unless its requirements are satisfied. Indeed, the Supreme Court was forced to grant the Government's request for emergency relief, to preserve the military's discretion to make deployment, assignment, and other operational decisions, in the face of the Fifth Circuit's assertion that RFRA somehow abrogated military nonjusticiability doctrine. *See Navy SEALs 1-26*, 142 S. Ct. at 1301; *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 346 (5th Cir. 2022). "[A] major departure from the long tradition of equity practice should not be lightly implied." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 395 (2006) (Roberts, C.J., concurring) (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982)).

## B. The *Mindes* Factors Weigh Against Granting Review.

Even if Plaintiffs had exhausted all available military remedies, the Court would still need to balance four factors to determine whether to grant review to claims in the Amended Complaint: (1) "[t]he nature and strength of the plaintiff's challenge to the military determination"; (2) "[t]he potential injury to the plaintiff if review is refused"; (3) "[t]he type and degree of anticipated interference with the military function"; and (4) "[t]he extent to which the exercise of military expertise or discretion is involved."

*Winck*, 327 F.3d at 1303 n.4 (quoting *Mindes*, 453 F.2d at 201); *Stinson v. Hornsby*, 821

F.2d 1537, 1540 (11th Cir. 1987). Each factor weighs against Plaintiffs here.

First, the nature and weakness of Plaintiffs' claims caution against review. The

claims raised in the Amended Complaint's fourth and fifth counts—challenging the

immunization program under the APA as contrary to 10 U.S.C. § 1107a and arbitrary

and capricious, Am. Compl. ¶¶ 122-40—surely cannot survive *Mindes* scrutiny as

Plaintiffs did not even argue they were likely to succeed on their merits at the

preliminary injunction stage. ECF No. 13 at 12-20. Indeed, several courts have

recently determined that similar 10 U.S.C. § 1107a claims are not likely to be

successful. *Crosby v. Austin*, No. 8:21-cv-2730, 2022 WL 603784, at *2 (M.D. Fla. Mar.

1, 2022); *Navy SEAL 1 v. Biden*, --- F. Supp. 3d ---, 2021 WL 5448970, at *2 (M.D. Fla.

Nov. 22, 2021); *John Doe #1-#14 v. Austin*, --- F. Supp. 3d ---, 2021 WL 5816632, at *6

(N.D. Fla. Nov. 12, 2021); *see* Am. Compl. ¶¶ 122-32. And "Plaintiffs point to no prior

case in which an APA-based challenge to an internal military policy survived *Mindes*

scrutiny,"[15] *Kuang v. U.S. Dep't of Def.*, 778 F. App'x 418, 420 (9th Cir. 2019), *cert.*

*denied*, 141 S. Ct. 2565 (2021). Similar claims have been rejected. *Oklahoma v. Biden*, --

- F. Supp. 3d ---, 2021 WL 6126230, at *11 n.29 (W.D. Okla. Dec. 28, 2021); *see also*

---

[15] Although an arbitrary and capricious claim arising under the APA is not identical to an arbitrary and capricious claim arising from due process, it is notable that courts have "have denied review when the constitutional claim was that a serviceman's due process rights were violated by arbitrary and capricious official action." *Nesmith v. Fulton*, 615 F.2d 196, 202 (5th Cir. 1980); *see also Woodward v. Marsh*, 658 F.2d 989, 994-95 (5th Cir. 1981); *West v. Brown*, 558 F.2d 757, 760 (5th Cir. 1977). The APA arbitrary and capricious "standard is exceedingly deferential." *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1360 (11th Cir. 2008) (quoting *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996)).

*Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1290-91 (11th Cir. 2021) (concluding plaintiff unlikely to succeed in APA claim against vaccination requirement outside military context). And as explained *infra*, many of Plaintiffs' claims fail as a matter of law.

With respect to Plaintiffs' first count, a claim raised under RFRA, Congress has explained that "the compelling interest test as set forth in [ ] Federal court rulings" prior to *Smith* "is a workable test for striking sensible balances between religious liberty and competing prior governmental interests." 42 U.S.C. § 2000bb(a)(4)-(5). Under the test applied to rulings involving a military interest, this Court "must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest." *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986); *see also* S. Rep. No. 103-111, at 12 (1993), *as reprinted in* 1993 U.S.C.C.A.N. 1892, 1901 (deference principles apply to RFRA claims); *Navy SEALs 1-26*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring) (reiterating the "reluctan[ce] to intrude upon the authority of the Executive in military . . . affairs"). Again, courts have rejected Service members' similar claims. *See, e.g. Roth v. Austin*, No. 8:22CV3038, 2022 WL 1568830, at *28 (D. Neb. May 18, 2022), *appeal filed*, No. 22-2058 (8th Cir. May 20, 2022).

Second, Plaintiffs' alleged potential "loss of military membership" may be "of great importance to the plaintiff[s]," but it is "not sufficient to warrant civilian judicial intervention in a military decision." *Nesmith v. Fulton*, 443 F. Supp. 411, 413 (M.D. Ga. 1978)*, aff'd*, 615 F.2d 196 (5th Cir. 1980); *see also Khalsa*, 779 F.2d at 1400. Again, no separation proceeding has even begun, leaving the nature and extent of any injury

wholly speculative. *See supra* at 5-7. The Court should not "easily dismiss the possibility that [Plaintiffs] will have a fair opportunity to make [their] case to a Board" if one were convened. *Shaw*, 539 F. Supp. 3d at 183. "[T]he threat to the [Plaintiffs'] federally protected rights must be one that cannot be eliminated by [their] defense against a single [discharge] prosecution." *Cf. Younger v. Harris*, 401 U.S. 37, 46 (1971). Because "any harms Plaintiff will face are not irreparable or certain to occur[,]" "[t]he second factor weighs against judicial review." *Mark Short*, 2022 WL 1051852, at *4. To the extent Plaintiffs are seeking to redress the Navy's operational decisions or their duty assignments, these injuries are not the sort that traditionally would have qualified as harm and, as explained above, are not otherwise justiciable. *See supra* at 8-11.

The final *Mindes* factors often "present a single inquiry, focusing on disruption of military functions[.]" *West*, 558 F.2d at 760-61. "[M]ilitary readiness and unit cohesion would be unacceptably harmed should the Court" issue the prayed-for declaratory or injunctive relief implicating the "DoD Vaccine Mandate." *Church*, 2021 WL 5179215, at *18; *see, e.g.*, ECF Nos. 31-4; 31-5. "[F]orcing the [Army] to adjust to the risks of including unvaccinated [soldiers] in its ranks is a substantial interference." *Thomas Short v. Berger*, --- F. Supp. 3d ---, 2022 WL 1203876, at *15 (D. Ariz. Apr. 22, 2022), (quoting *Mark Short*, 2022 WL 1051852, at *5), *appeal filed*, No. 22-15755 (9th Cir. May 18, 2022). "[I]llness at sea require[s] transport off the ship" and "[e]ven in port, . . . outbreaks of illness" on Navy ships "can result in delays in time sensitive maintenance and training as well as increased risk of accident or fire due to strained

watch bills." ECF No. 31-15 ¶ 6. Moreover, "[s]ending ships into combat without maximizing the crew's odds of success, such as would be the case with ship deficiencies in ordnance, radar, working weapons or the means to reliably accomplish the mission, is a dereliction of duty." *Navy SEALS 1*-26, 142 S. Ct. at 1302 (Kavanaugh, J., concurring) (citation omitted). Even the risk of a single Plaintiff going unvaccinated is serious because unvaccinated individuals have many times the risk of testing positive for COVID-19. ECF No. 31-4 ¶¶ 16-17; ECF No. 31-5 ¶¶ 16. To review Plaintiffs' claims, the Court "would necessarily involve itself in 'complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force.'" *Thomas Short*, 2022 WL 1203876, at *15 (quoting *Mark Short*, 2022 WL 1051852, at *5). By requiring the military to retain, deploy, or assign each Plaintiff without regard for his or her vaccination status, the Court would improperly insert itself into each Plaintiff's chain of command, overriding military commanders' expert judgments about operational needs, including Plaintiffs' fitness to serve and carry out their duties. "[T]he public's interest in military readiness and the military's interest in Plaintiff[s'] health outweigh Plaintiff[s'] [claimed] religious liberty interest." *Navy SEAL 1 v. Austin*, ---F. Supp. 3d---, 2022 WL 1294486, at *16 (D.D.C. Apr. 29, 2022), *appeal filed*, No. 22-5114 (D.C. Cir. May 5, 2022).

IV.   **Plaintiffs' Remaining Claims Fail as a Matter of Dispositive Issues of Law.**

A. **Plaintiffs' Free Exercise Clause Claim Fails.**

Plaintiffs' claim, Am. Compl. ¶¶ 105-14, that the Navy's immunization program violates the Free Exercise Clause because "their religious beliefs prohibit[] them from receiving the available COVID-19 vaccines[,]" *id.* ¶ 109, fails as a matter of law. "The desirability" of the immunization program "in the military is decided by the appropriate military officials, and they are under no constitutional mandate to abandon their considered professional judgment." *Goldman*, 475 U.S. at 509.

Plaintiffs claim that strict scrutiny applies to this claim, Am. Compl. ¶ 112, but they "cite[s] no authority for" their "assumption that courts should review . . . military actions under" such a "free-ranging inquiry[.]" *See Trump v. Hawaii*, 138 S. Ct. 2392, 2420 n.5 (2018). Plaintiffs fail to plead facts that "permit the court to infer more than the mere possibility" that the challenged immunization program is based on anything other than considered professional military judgment. *See Ashcroft*, 556 U.S. at 679; *Goldman*, 475 U.S. at 509; *see also Navy SEAL 1*, 2022 WL 1294486, at *13.

B. **Plaintiffs' Due Process Claim Fails as a Matter of Law.**

Although Plaintiffs' due process claims, Am. Compl. ¶¶ 115-21, are far from clear,[16] they fail as a matter of law no matter how they are construed. To the extent

---

[16] Plaintiffs' due process claims are improperly pleaded in one count. Am. Compl. ¶¶ 115-21. Courts in this district have dismissed claims on shotgun pleading grounds where, as here, a count "purports to state a claim for a violation of [a plaintiff's] Fifth Amendment rights, but it is unclear whether [the plaintiff] is alleging a violation of his procedural due process rights or his substantive due

Plaintiffs raise a void-for-vagueness claim against the vaccination directive, *see* Am. Compl. ¶ 116 (complaining that the directive fails to "provid[e] 'fair notice] of the rules to which [Plaintiffs] are subject"), it must fail. The directive, ECF No. 1-2, states clearly what is required of Service members; Plaintiffs can have "no reasonable doubt" as to what is requires, *see Parker v. Levy*, 417 U.S. 733, 757 (1974).

To the extent Plaintiffs challenge the vaccination directive as violating procedural due process, their claim fails because the directive itself is not an "adjudicative action[]." *Jones v. Governor of Fla.*, 975 F.3d 1016, 1048 (11th Cir. 2020); *see also Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445-46 (1915) ("When a rule of conduct applies to more than a few people" due process satisfied by Plaintiffs' "power, immediate or remote, over those who make the rule"); *Let Them Play MN v. Walz*, 517 F. Supp. 3d 870, 886 (D. Minn. 2021); *Hartman v. Acton*, --- F. Supp. 3d ---, 2020 WL 1932896, at *8-10 (S.D. Ohio Apr. 21, 2020). And any formal discipline or adverse administrative action, such as involuntary separation, that may

process rights or both." *Thorn v. Randall*, No. 8:14-cv-862, 2014 WL 5094134, at *3 (M.D. Fla. Oct. 10, 2014). "Procedural due process [and] substantive due process . . . claims each have their own legal standards and elements of proof." *Apothecary Dev. Corp.*, 2011 WL 1071448, at *2. "It is impermissible to combine multiple claims with different legal standards into one count." *Id.*; *see also Clewiston Commons LLC v. City of Clewiston*, No. 2:18-cv-339, 2019 WL 2515830, at *2 (M.D. Fla. June 18, 2019) (directing plaintiff to separate substantive and procedural due process claims into separate counts); *Arroyo v. Judd*, No. 8:10-cv-911, 2010 WL 3044053, at *3 (M.D. Fla. July 30, 2010); *Wright v. Chattahoochee Valley Cmty. Coll.*, No. 3:06-cv-1087, 2008 WL 4877948, at *4 (M.D. Ala. Nov. 12, 2008). Not only do Plaintiffs fail to clarify whether they raise a procedural or substantive due process claim, but they also appear to raise a void for vagueness claim in the same count, *see* Am. Compl. ¶ 116, (complaining about a lack of "fair notice"). Procedural due process, substantive due process, and void-for-vagueness doctrine "have their own legal standards and elements of proof." *Apothecary Dev. Corp. v. City of Marco Island*, No. 2:10-cv-392, 2011 WL 1071448, at *2 (M.D. Fla. Mar. 18, 2011), and must be pleaded in separate counts.

plausibly result from the failure to vaccinate against COVID-19 would provide ample opportunity for procedural due process. *See supra* at 5-7.

Any substantive due process claim also fails. Mandatory vaccinations for the public at large have long been held not to violate substantive due process. *Jacobsen v. Massachusetts*, 197 U.S. 11, 35 (1905). So there is no basis to doubt that a military vaccination order satisfies substantive due process. *See id.*; *Rostker*, 453 U.S. at 64-67.

Moreover, Plaintiffs fail to identify a "constitutionally protected interest in life, liberty, or property." *Bank of Jackson Cnty v. Cherry*, 980 F.2d 1362, 1366 (11th Cir. 1996). It is well-settled that "a military officer's expectation of continued military employment does not rise to the level of a property interest unless it is rooted in some statute, regulation, or contract." *Doe v. Garrett*, 903 F.2d 1455, 1462 (11th Cir. 1990); *see also Sims v. Fox*, 505 F.2d 857, 862-64 (5th Cir. 1974) (no property or liberty interest in plaintiff's discharge from military service); *Wilhelm v. Caldera*, 90 F. Supp. 2d 3, 8 (D.D.C. 2000), *aff'd*, 6 F. App'x 3 (D.C. Cir. 2001); *Navas v. Gonzalez Vales*, 752 F.2d 765 (1st Cir. 1985); *Rich v. Sec'y of the Army*, 735 F.2d 1220 (10th Cir. 1984); *Woodard v. Marsh*, 658 F.2d 989 (5th Cir. 1981); *Ampleman v. Schlesinger*, 534 F.2d 825 (8th Cir. 1976). Again. even if Plaintiffs could identify some protected liberty interest, there is no plausible dispute that the military's extensive procedures—both regarding the religious exemption process and any consequences from refusal to follow the lawful order to vaccinate—provide ample, meaningful notice and opportunity to be heard. *See supra* at 5-7.

25

Plaintiffs' claim that they were denied an impartial decision maker in adjudicating their religious accommodation requests, Am. Compl. ¶ 119, fails even assuming it is associated with deprivation of a constitutionally protected interest. *See Kerry v. Din*, 576 U.S. 86, 101 (2015) (Kennedy, J., concurring). Plaintiffs do not plausibly allege that their religious accommodation request determination letters failed to "provide[] a 'facially legitimate and bona fide' reason for" the determination." *Id.* at 103 (Kennedy, J., concurring) (citation omitted). Even if procedural due process required more—including someone impartial to accommodate their request to remain unvaccinated while serving in the Navy—Plaintiffs' reflexive citation of the percentages of religious accommodation requests denied comes nowhere close to pleading facts that "permit the court to infer more than the mere possibility" that their personal individualized adjudications were unconstitutionally biased.[17] *See Ashcroft*, 556 U.S. at 679; *United States v. Rodriguez*, 627 F.3d 1372, 1381-82 (11th Cir. 2010) (rejecting mere appearance of bias); *Hendrix v. Sec'y, Fla. Dep't of Corr.*, 527 F.3d 1149, 1153-54 (11th Cir. 2008) (same); *Whisenhant v. Allen*, 556 F.3d 1198, 1209 (11th Cir. 2009). Courts that have reviewed administrative records developed during the religious accommodation request process have found that the military has "made individualized determinations of the harm to the" particular Service's "compelling interests in readiness and health and safety of service members, including the individual applicants, of granting specific exemptions to particular religious

---

[17] Plaintiffs lack standing to challenge Defendants' decisions to grant or deny religious accommodations requests made by other Service members.

claimants." *Roth*, 2022 WL 1568830, at *15. "[I]t is not surprising that numerous requests, even considered individually, could run afoul of the same handful of circumstances warranting denial of an exemption." *Id.* Accordingly, Plaintiffs' due process claims, Am. Coml. ¶¶ 115-21, must be dismissed.

### C. Plaintiffs Lack APA Standing to Challenge the Vaccination Directive as Contrary to 10 U.S.C. § 1107a, 21 U.S.C. § 360bbb-3 or 42 U.S.C. § 262

Plaintiffs cannot claim that any agency action is contrary to 1107a, *see* 5 U.S.C. § 706, Am. Compl. ¶¶ 122-32, because their interests fall outside the zone of interests protected by the statute. The APA's grant of standing to persons "adversely affected or aggrieved by agency action within the meaning of a relevant statute," 5 U.S.C. § 702,[18] does not extend to the full reach of Article III, and is satisfied only of the plaintiff's interests are "arguably within the zone of interests to be protected or regulated by the statute" that the plaintiff says was violated. *See Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129-30 (2014). Plaintiffs allege that they have "sincerely held religious beliefs that prohibit them from receiving the COVID-19 vaccine" and "compel them to oppose the mandate." Am. Compl. ¶¶ 3, 64. It cannot reasonably be assumed that, in "[t]he particular language of" Section 1107a, "Congress intended to protect" outright objection to a vaccine on religious, philosophical, or political grounds regardless of whether it is FDA approved. *See Air Courier Conf. of Am v. Am. Postal*

---

[18] Although confusingly pleaded, Plaintiffs state that this count is "brought under the APA." Am. Compl. ¶ 128.

*Workers Union, AFL-CIO*, 498 U.S. 517, 524-25 (1991). For these reasons, count four, Am. Compl. ¶¶ 122-32, must be dismissed.[19]

### D. The APA Does Not Authorize Plaintiffs' Programmatic Attack.

The Court should also dismiss Plaintiffs' fourth and fifth counts, Am. Compl. ¶¶ 122-40, because they fail to clearly identify the "circumscribed, discrete agency action[]" or actions at issue. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004).[20] "Under the terms of the APA, [Plaintiffs] must direct [their] attack against some particular 'agency action' that causes [him] harm." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).

Here, the Amended Complaint does not merely seek review of the Secretary's August 2021 Memorandum. Rather it seeks review of something it calls the "Navy Mandate" as well, *see, e.g.,* Am. Compl. ¶¶ 125, 134, 139, which the Amended Complaint defines as the Navy's general "execut[ion]" of Secretary Austin's August 2021 Memorandum, *see id.* ¶ 1 (defining "Navy Mandate")—an uncircumscribed list

---

[19] Even if this issue were not determinative, this claim should be dismissed as unripe because Plaintiffs "do [] not allege that [they were] specifically denied an FDA-licensed dose" *Crosby*, 2022 WL 603784, at *2, after formally requesting one using any aspect of the "comprehensive internal system" available "for the review and remedy of complaints and grievances[,]" *see Chappell*, 462 U.S. at 302. Accordingly, Plaintiffs have not obtained "an administrative decision [that] has been formalized" in any way on whether the vaccines they are willing to take are available. *See Wilderness Soc'y*, 83 F.3d at 390; *Pittman v. Cole*, 267 F.3d 1269, 1279-80 (11th Cir. 2001). "The DoD has received hundreds of thousands of Pfizer-BioNTech BLA-manufactured, EUA-labeled COVID-19 vaccine doses[.]" ECF No. 31-5 ¶ 18.

[20] Although confusingly pleaded, Plaintiffs' fourth count is "brought under the APA." Am. Compl. ¶ 128.

of unspecified actions.[21] But as the Supreme Court made clear in *Lujan v. National Wildlife Federation*, a plaintiff cannot use the APA to bring a collective challenge to a sweeping group of actions. Broad programmatic attacks are not "agency action" under 5 U.S.C. §§ 704, 706(2). The Amended Complaint does not identify the guidance it challenges with any degree of clarity.

Plaintiffs may not challenge "the continuing (and thus constantly changing) operations of the" Navy as it carries out its vaccination policies. *See Lujan*, 497 U.S. at 890. Yet Plaintiffs' purported APA counts appear to challenge administration of a program generally, not a particular agency action. For example, Plaintiffs complain that Defendants have "ordered Plaintiffs and all other service members to received unlicensed, EUA vaccines 'as if' they were FDA-license vaccines[,]" Am. Compl. ¶ 123. But the Amended Complaint alleges that the vaccination directive "states that only FDA-licensed vaccines, labeled in accordance with FDA requirements, could be mandated." *Id.*; *see* ECF No. 1-2. The APA "reflects the legal principle of permitting agencies to deal thoroughly in the first instance with issues" and Plaintiffs have made no effort to build a record before the military on the availability of certain vaccines. *See Cousins v. Secy's of the U.S. Dep't of Transp.*, 880 F.2d 603, 610 (1st Cir. 1989).

That the Secretary's August 2021 Memorandum might be an agency action does not correct the Amended Complaint's flaws. In *Lujan*, the Supreme Court dispelled

---

[21] The Amended Complaint defines the term "Navy Vaccine Mandate" as ALNAV 062/21, Am. Compl. ¶ 25, which appears to be only one aspect of the "Navy Mandate" challenged in counts four and five, *see* Am. Compl. ¶ 1 (defining "Navy Mandate").

any notion that the existence of one agency action permits a suit that nonetheless raises a programmatic challenge to proceed:

> [I]t is at least entirely certain that the flaws in the entire "program"—consisting principally of the many individual actions referenced in the complaint, and presumably actions yet to be taken as well—cannot be laid before the courts for wholesale correction under the APA, simply because one of them that is ripe for review adversely affects [a plaintiff].

*See Lujan*, 497 U.S. at 892-93. Plaintiffs' APA claims, Am. Compl. ¶¶ 122-40 must be dismissed.

## V.   Plaintiffs' Declaratory and Injunctive Relief Count Fails to State a Claim

In Count VI of the Amended Complaint—titled "Declaratory and Injunctive Relief"—"Plaintiffs seek judicial review and injunctive relief . . . pursuant to the inherent equity powers of the Court[.]" Am. Compl. ¶ 145. But the Declaratory Judgment Act does not supply a cause of action, only a remedy. *Watkins v. Haynes*, No. CV210-004, 2010 WL 4237721, at *1 (S.D. Ga. Aug. 30, 2010). So too, "while a claim for injunctive relief may 'purport[] to be a cause of action, it is actually a demand for equitable relief based on the wrongs alleged in other claims in the pleadings.'" *Northstar Healthcare Consulting, LLC v. Magellan Behavioral Health Sys., LLC*, No. 1:17-CV-1071, 2017 WL 7660404, at *2 (N.D. Ga. May 17, 2017) (citation omitted). Thus citation to the mere availability of these remedies does not state a separate cause of action and the sixth count, Am. Compl. ¶¶ 141-45, must be dismissed. *See id*.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed under Rule 12(b)(1) or, in the alternative, under Rule 12(b)(6).

Dated: July 1, 2022

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

Respectfully submitted,

*/s/ Liam C. Holland*
ANDREW E. CARMICHAEL
AMY E. POWELL
Senior Trial Counsel
STUART J. ROBINSON
Senior Counsel
ZACHARY A. AVALLONE
LIAM C. HOLLAND
CATHERINE M. YANG
MICHAEL P. CLENDENEN
JOHNNY H. WALKER
CASSANDRA M. SNYDER
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-4964
Email: Liam.C.Holland@usdoj.gov

*Counsel for Defendants*